Yes, Your Honor, this is George Gaitas on behalf of Mayhem Crude. May I reserve, if there's going to be any time left, two minutes for rebuttal? All right. I'll watch your clock and ask you to do the same. Thank you very much, Your Honor. I would like to focus in arguing this case on the factual issues only, because they may resolve the legal issues that have been brought before the court without wanting to minimize at all the importance of the analysis and the briefing of the legal issues. The basic factual framework of this case is that a vessel, an Aframax 110,000-ton tanker, was dispatched by her operators to Richmond, California, to discharge a full cargo of crude oil. And she remained in California for three weeks, approximately. The defendants asserted that there was no personal jurisdiction, and the court, the district court, defined personal jurisdiction based on the case of Axiom Foods v. Acer Chemicals. But even putting the personal jurisdiction issue to the side, the district court also ruled on the grounds of foreign non-convenience. Absolutely, Your Honor, and I'll address that. But we don't have to address the personal jurisdiction question, under Sinochem. If the foreign non-ruling was not error, then it could be affirmed on that basis. And so what was the infirmity in foreign non-ruling? Your Honor, on the foreign non-convenience, the court, our objection, our objection point of appeal was that the defendants did not assert an essential element for anyone who wants to plead such a defense. And that is to make a factual showing of oppressiveness or vexation if the case is a plaintiff. This issue was raised below in briefing, and we pointed it out, and it was also raised in oral arguments. It did not receive a response from the defendants. The question is, you know, if you look at the Rovello v. Rosa case, and it lays out various indicia, what's the basis to oppose the foreign non-convenience ruling here, in terms of the facts of the case, and where the parties are, and where the witnesses are, and all of the other things that relate to this? Your Honor, the parties here are on equal footing in terms of convenience, because they're all foreigners in different jurisdictions. They're in Singapore, they're in Greece, they're in England, and this is a neutral third forum. They're equidistant from it. There is no hardship. They're all seafaring interests, and seafaring parties expect to be sued where they carry on business. So they carried on business in Richmond, California, and there's no oppressiveness. The district court was concerned that the relevant evidence and witnesses are located abroad. Most of the witnesses are in Singapore. The difficulties of litigating in the United States, what is essentially a foreign dispute involving entirely foreign parties, foreign acts, and a related foreign proceeding would impose unnecessary costs. So what was wrong with that conclusion? Your Honor, all the parties in this case are foreigners. All the parties are subject to inconvenience. They are on equal footing. As you know, in maritime disputes, often parties refer their disputes to arbitration. So is it untrue that most of the witnesses are in Singapore? That's what the district court found. That is incorrect, Your Honor, factually. There was no showing that most of the witnesses are in Singapore, and we asserted the contrary, and the affirmative showing that our opponents had to make was not made. There's no oppressiveness. There's no vexation. It is a garden variety maritime case. That's all it is, and these are tried wherever one conducts business, whether he's an owner, whether he's a charterer, whether he's a merchant that goes to sea. Well, I mean, under that theory, basically, you have universal worldwide jurisdiction, and I don't think that's what the cases say if we were to take your statement at face value, and so that's why we have these specific criteria. That's why we first look at specific jurisdiction and whether it can happen here, but if not, as Judge Brest points out, the alternative grounds is for an inconvenience. So I don't think that where there's no particular connection to the forum with respect to the evidence in the case, I'm having some trouble understanding your objection. Your Honor, the objection is that the burden is on our opponents to show that they are oppressed and vexed by our choice of forum, and the forum is not unrelated at all to the dispute. Indeed, this is where the vessel was detained. This is where the United States Coast Guard inspected. This is where the cargo was delivered. This is where the agents are located. It's a very appropriate forum in these terms, and what we heard from opponents in their arguments below was that Singapore has good courts, and they're good courts, good civil courts, but these are no grounds for dismissal on forum nonconvenience. It shouldn't be, as we understand the law. It isn't available just for the asking when other fora are equally convenient to the parties, and in a case such as this, none of the parties has a better claim to the forum of its choice. If we had the choice, we would say the best forum would be Greece because the beneficial owners agree, but that doesn't matter, and it doesn't matter when they say that Singapore is a better forum because none of the acts were committed in Singapore. It is only that some of the parties are in Singapore. You're down to two and a half minutes just for your information. I will. I may reserve that. I will not address then. I understand that the court does not want to hear on the issue of a personal jurisdiction. Well, it might come up in the... It's not that we don't want to hear it. It's that we started some of our questioning on forum nonconvenience, but it may well come up from the other parties, and of course, you could then address it. All right. Thank you very much, Your Honor. I'll reserve my two minutes, and I'll respond. Thank you. My understanding is that Mr. Loeb and Mr. McPherson, you're going to split your time, and Mr. Loeb, are you going first? Yes, Your Honor. Okay. I put eight minutes on the clock for you. You may proceed. Thank you, ma'am. Please, the court. I represent Borelli Walsh, Cosimo Borelli, and Jason Kardashian, all foreigners. Indeed, this is a foreign-queued case. Appellant, appellees are all foreigners, and the district court correctly found that there is no nexus to the allegations in this case to California because all of the conduct that issue occurred abroad, and because the cause of the claim here, the nonpayment to plaintiff, didn't happen in California at all. That's not even the issue, really. What plaintiff truly complains about is the insolvency filing in Singapore of the entity from whom it seeks to collect. I saw that in your brief, but their complaint focuses on the tort of conversion, and they claim it's a continuing tort, stating, I guess, debris. If it's a continuing tort, then the conversion and the lack of your client's or the lack of their client's control happens at every point during the period before it's turned over to them. I understand, Your Honor. I think from a straightforward common-law perspective of what conversion is, that's an accurate statement of the law. But in maritime admiralty jurisdiction, the tort of conversion doesn't exist, per se. There is no tort of that denomination. We do think that the purposeful direction test applies under Calder, and that when the harm, which is nonpayment, under the Charity Partner Agreement is analyzed, Mayhem has failed to allege any effect suffered in California. The issue is nonpayment. The tort of conversion doesn't exist in maritime law. Is there a case that says that, or where can I turn to find that as the rule? I don't have that at my fingertips, Your Honor, and I can submit a supplemental brief to briefly address that, if Your Honor would like. Well, it seems like a key point. That's their theory. Yeah, I mean, there's a little bit there. There's certainly, I don't know that we take it as anything, but there certainly is either a law review or an industry review that just says it's not commonly litigated, but it doesn't say it's not a tort cognizable under maritime law. Can you address the, unless my colleagues were going to continue on this line, I would ask you, can you respond to your opposing counsel's point on forum non? He essentially argued that you haven't come forward with evidence or a showing on that point. Can you address that? Yes, Your Honor. Frankly, I was somewhat surprised to see that argument made. I've got sites to the record below in which we argue and evidence all of the elements that would support the finding that it would be vexatious, oppressive, and inconvenient for the defendants to litigate the case here. First, the distance from their business operations creates inconvenience. We cite to the documents in the record demonstrate that Borrelli Walsh operates in the Asia Pacific region, maintains no offices or employees here in California. That's at the record 562-563, 577-580, 584-603. In numerous places, we point to the distance that the defendants would have to travel to California for litigation. Second, the record contains numerous pieces of evidence and argument supporting our position that there is no local evidence or witnesses here in California. And if we look in the record, Mr. Borrelli testifies in his declaration that he doesn't travel to California. That's at 547-550. There's a declaration from the representative of Standard Chartered at 32-34 attesting to the relevant witnesses or documents in California in the possession of SCB. And I don't know that it's supported by the law, but your opposing counsel says, well, actually given the scope of the operations of these companies, it's equally inconvenient everywhere. So California is no more inconvenient. I think that's his argument in that you haven't shown anything particularly oppressive or vexatious. So how do you respond to that particular argument? Thank you, Your Honor. So I think we have shown that it's oppressive, vexatious, and costly to be here. And as Judge Ikuda suggested, the federal district courts in the United States are not the forum to resolve all international disputes, even if it is a convenient place. There are grounds for dismissal on the basis of forum non. This case meets all the elements. I'm thinking of a case, Twazin v. R.J. Reynolds, where the court affirmed a forum non-dismissal for the policy reasons that exist here. Singapore, the forum we've proposed as an altered forum, has adequate and appropriate courts, legal system. And in fact, we would have to go back to Singapore to resolve any litigation out here anyway through the insolvency proceeding. And so I think at the end of the day, it's not enough to say that California is just as convenient or inconvenient as any other where grounds exist, as we've demonstrated, that it is an inconvenient, costly, and expensive, faraway forum for this dispute to be resolved. If there's no other questions, I'll reserve the balance. Thank you. Well, there's not any additional reserving. You have your eight minutes, and then we have Mr. McPherson, and then Mr. Gaitas has rebuttal. So you don't have any rebuttal. If you have some more to say, please. I think we've covered it. Thank you, Your Honor. All right. Thank you. Mr. McPherson. Thank you very much, Your Honor. May it please the court. I'm Mark David McPherson on behalf of the other defendants and the Pelly Standard Chartered Bank in this case. I really just wanted a few seconds just to reiterate and underscore a key point so that it doesn't get that it has personal jurisdiction, that the court has personal jurisdiction over the Borelli defendants. They haven't quite yet won a reversal of the district court's decision as to Standard Chartered Bank. And that's because Standard Chartered is one step removed from the transaction here. The case for personal jurisdiction over the bank is even more attenuated than it is over the Borelli defendants. There's actually no allegation anywhere that Standard Chartered engaged in or with respect to how it conducted the receivership. We made this point in our in our brief at page 10. The court will not find a single word about this in either of Mayhem's briefs, neither the opening brief nor the reply brief. Nowhere do they say anything at all about the personal jurisdiction over the bank. Nowhere. In fact, in the complaint, there's only one sentence about the bank in relation to this issue, and that is the sentence that the bank ratified Borelli's And as the as this court held in both in both the Kramer case and the Williams against Yamaha case, there has to be more about one defendant's control over another for that second defendant to act as an agent for personal jurisdiction purposes. There's nothing like that here. And that's that's the only point I wanted to make. But to to to respond to the continuing conversion point about all of the defendants, if I could just make one point, which is for personal jurisdiction purposes, the question is not whether there's a continuing tort, but whether the the plaintiff's injury would have happened but for the forum conduct. And here it's clear from the plaintiff's brief. If you look at Mayhem's opening brief at page three, it's absolutely clear that if there was a conversion here, it happened when the vessel was in Malaysia or Indonesia. Nothing that happened in California had any relationship to the plaintiff's Mayhem's purported injury here. Thank you, your honors. Thank you. Mr. Curtis. You're muted. Briefly responding to Mr. McPherson, with regard to the relationship of the bank being twice removed from all of this activity for purposes of purposes of personal jurisdiction, we actually have dealt with this point, citing the Walden case of the U.S. Supreme Court, which holds briefly that one can enter for purposes of specific personal jurisdiction, one can enter through an agent, through sending an email. The means, the means is certainly here and the agency relationship is still there. They were carrying on the business of the bank, Mr. Borelli Walsh, when they directed the ship to come to 100,000 tons crude oil. Now, in terms of the purposeful direction, the port where the wrongful possession is exercised. This is where the harm happened. This is where the ship was dispatched with 100,000 tons of crude oil. You're freezing just a little bit there. Do you want to try to repeat that? We may need some assistance here as one of our counsel is frozen. I am on. I've been on all along. I want to go back. I want to put a minute on the clock and let you pick up. Your Honor, I'm not sure at what point you lost me. I think it was when I was talking about the legal harm from conversion. Yes. And that, according to the jurisprudence we have cited, occurs where the wrongful possession is exercised. And the place where the wrongful possession was exercised for three weeks straight was in California, in Richmond, California. So definitely there was purposeful direction and definitely the harm arose out of there because the plaintiff was deprived of the possession of its vessel in California. That's the harm. It's not the economic harm that Mr. Loeb suggested that takes place somewhere where the vessel owner has his base of operations or whatever other place. It's not the economic harm. The harm from conversion is not the economic harm. It is losing possession by somebody who takes the property of the plaintiff adversely and does not return it. Thank you. I appreciate the argument from all three counsel here today. The case just argued of Mayhem v. Borelli Walsh is submitted.
judges: McKeown, Ikuta, Bress